UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Eugene Maxwell,<br>     Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:99cv2126 (JBA) |
| | : |
| Jo Anne B. Barnhart,<br>Commissioner of Social<br>Security,<br>Defendant. | :<br>:<br>:<br>: |

**RULING ON PLAINTIFF'S OBJECTION TO THE RECOMMENDED RULING
[DOC. # 52] DETERMINING PENDING MOTIONS [DOCS. ## 41, 49]**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) requesting review of a final decision by the Commissioner of Social Security (the "Commissioner"), which partially denied plaintiff Disability Insurance Benefits ("DIB").  Currently pending before this Court is plaintiff's Motion for an Order Reversing the Decision of the Commissioner, or in the Alternative, Remand for a New Hearing [Doc. # 41] and defendant's Motion for an Order Affirming the Commissioner [Doc. # 49].  On August 11, 2006, Magistrate Judge Joan Glazer Margolis issued a Recommended Ruling granting plaintiff's motion in part and remanding the matter "for further supplementation of the record by a vocational expert and further consideration by an [Administrative Law Judge]" and denying defendant's motion in part.  See Rec. Ruling [Doc. # 52].

Plaintiff subsequently filed an objection to the Recommended Ruling on the basis that Administrative Law Judge ("ALJ") Horton

1

improperly rejected the testimony from the medical expert[1] of the
Social Security Administration, Anthony Campagna, Psy.D.,
concluding that beginning in September 1994 plaintiff's condition
constituted a listed impairment thus entitling him to benefits.
Pl. Obj. [Doc. # 54]; Pl. Mem. [Doc. # 56].  Plaintiff seeks
reversal of the Commissioner's decision or, alternatively, remand
for additional hearing.  Id.  Defendant opposes plaintiff's
objection contending that the ALJ properly accorded only limited
probative value to Dr. Campagna's testimony due to "major
inconsistencies" therein and argues that plaintiff has not
identified any error in the analysis and rationale of the
Magistrate Judge.  Def. Opp. [Doc. # 57].  Defendant also
observes that the Recommended Ruling grants plaintiff's
alternative requested remedy of remand for additional hearing.
Id.

     For the reasons that follow, plaintiff's Objection will be
overruled and the Recommended Ruling will be approved and
adopted.

## I.   Factual and Administrative Background

     The Court refers to the detailed description of the factual
and administrative underpinning of this dispute in the
comprehensive Recommended Ruling.  Most relevant to plaintiff's

---

[1] There were no other medical experts retained by either
side.

2

Objection is the testimony of Dr. Campagna, which plaintiff argues is uncontradicted in establishing that plaintiff has a listed impairment and thus qualifies for DIB.  Magistrate Judge Margolis concluded that the ALJ's determination that Dr. Campagna's testimony was not dispositive was supported by substantial evidence.

Dr. Campagna testified at the hearing before the ALJ that there was evidence of "organic [brain] deterioration and dysfunction" in plaintiff's December 1994 MRI and to support the conclusion that the organic brain dysfunction would have continued "whether [plaintiff] continued from 1994 on to use the drugs and alcohol or not."  Certified Transcript of Administrative Proceedings ("Tr.") at 659.[2]  Dr. Campagna further stated that plaintiff's intellectual functioning tests showed that his condition "basically plateaued" notwithstanding his October 2000 remission from drugs and alcohol dependence.  Id. at 660-61.  Dr. Campagna also testified "with reasonable medical certainty that similar problems were present [in plaintiff] as early as September" of 1994.  Id. at 664.  Dr. Campagna concluded, based on his review of plaintiff's medical record, that plaintiff "meets the standards under 12.02 with the category

---

[2] As Magistrate Judge Margolis noted, pages 1-303 of the February 17, 2000 and September 13, 2004 transcripts are for all practical purposes identical, and thus the Court refers to both as "Tr."

3

of organic mental disorders" from "as far back as 1994." Id. at 655, 664.[3]  Dr. Campagna based his opinions on the plaintiff's

_____

[3] In order to meet the listing impairment in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.02, the plaintiff must satisfy the requirements of Sections A and B of the Listing, or the requirements of Section C, as follows:

A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
1. Disorientation to time and place; or
2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
4. Change in personality; or
5. Disturbance in mood; or
6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;
OR
C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of

4

medical records dating back to 1994, including the "examinations and treatments in the years following 1994 to the present."  Id. at 655-56.

ALJ Horton determined that Dr. Campagna's testimony was contradicted by evidence in plaintiff's medical record, which finding the Magistrate Judge concluded was supported by substantial evidence.  It is these conclusions that plaintiff contends were improper on grounds that "[a]t the last hearing, [Dr. Campagna,] after reviewing all the medical evidence in the record (the first and only expert to do so) and hearing Mr. Maxwell's testimony stated that Mr. Maxwell's condition met the Listing of Impairments as of September 1994" and due to the fact that "the Magistrate Judge wrongfully supported [the ALJ's] decision by again mischaracterizing the non-examining physicians as examining physicians (for example Dr. Anton, Tr. 143, and Dr. Griel, Tr. 173)."  Pl. Mem. at 2.

The ALJ ultimately concluded that plaintiff was disabled and entitled to retroactive benefits beginning on August 9, 1998,

---

extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

when plaintiff reached "advanced age" (55 years old), but that plaintiff was not disabled prior to that date, i.e., from June 2, 1995 to August 8, 1998.  Tr. at 304-24.  As described in the preceding paragraph, Magistrate Judge Margolis concluded that the ALJ's determination that plaintiff did not meet the listing requirements in Section 12.02, including the ALJ's rejection of Dr. Campagna's testimony, was supported by substantial evidence. However, Magistrate Judge Margolis also found that the ALJ's inquiry with respect to the fifth step of the disability inquiry – whether the Commissioner had met her burden of showing that plaintiff was capable of pursuing alternative work other than his prior position – was not supported by substantial evidence as the ALJ refused to allow the testimony of a vocational expert, which "deprived plaintiff of the opportunity to have a vocational expert review his entire medical record before presenting his testimony, and deprived plaintiff's counsel the opportunity to cross-examine the vocational expert in light of the new medical evidence [and also] prevented the Commissioner from the opportunity to satisfy her burden that plaintiff's impairments permit certain types of activity necessary for other occupations and that there is other work existing in the national economy that plaintiff can perform."  Rec. Ruling at 54.  Magistrate Judge Margolis thus recommended remand of this matter "for further supplementation of the record by a vocational expert and

6

further consideration by an ALJ." <u>Id</u>. at 57.  For obvious
reasons, plaintiff does not object to this finding of the
Magistrate Judge, although he bemoans the fact that this
application has been pending for 11½ years without conclusion.

**II.  Discussion**

   A.   Standard of Review of a Magistrate Judge's Recommended
        Ruling

        In the face of an objection to a Magistrate Judge's
recommended ruling, the District Court makes a <u>de novo</u>
determination of those portions of the recommended ruling to
which an objection is made.  This Court may adopt, reject, or
modify, in whole or in part, the Magistrate Judge's recommended
ruling.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

   B.   Standard of Review of a Social Security Disability
        Determination

        This Court will set aside the ALJ's decision only upon a
finding that it was based upon legal error or is unsupported by
substantial evidence.  <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d
Cir. 1998).  Substantial evidence is more than a "mere
scintilla," it is "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." <u>Richardson v.
Perales</u>, 402 U.S. 389, 401 (1971) (internal quotation and
citation omitted); <u>Yancey v. Apfel</u>, 145 F.3d 106, 111 (2d Cir.
1998).  The substantial evidence standard also applies to
inferences and conclusions that are drawn from findings of fact.

7

See <u>Gonzalez v. Apfel</u>, 23 F. Supp. 2d 179, 189 (D. Conn. 1998).
Thus, absent legal error, this Court may not set aside the
decision of the ALJ if it is supported by substantial evidence.
<u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999).

The Social Security Act provides that every individual who
suffers from a "disability" is entitled to disability insurance
benefits.  <u>See</u> 42 U.S.C. § 423(a)(1).  "Disability" is defined as
an "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months."  42 U.S.C. § 423(d)(1)(A).

In reviewing disability claims, the agency must follow a
five-step process.  First, the agency will determine whether a
claimant is engaged in substantial gainful activity and, second,
whether the claimant has an impairment which is of the required
duration and which significantly limits his or her ability to
work.  If the claimant is engaged in substantial gainful activity
or does not have a sufficiently severe impairment, the claim will
be disallowed.  <u>See</u> 20 C.F.R. § 404.1520(a)-(c).  Third, the
medical evidence of the claimant's impairment is compared to a
list of impairments presumed severe enough to preclude any
gainful work, and if the claimant's impairment matches or
"equals" one of the listed impairments, he or she qualifies for

8

benefits without further inquiry.  See 20 C.F.R. § 404.1520(d).
However, if the claimant does not qualify under the listings, the
agency must take the fourth step of determining whether the
claimant can perform his or her own past work, see 20 C.F.R. §
404.1520(e)-(f), and if not, take the fifth step of assessing the
claimant's present job qualifications, and whether jobs exist in
the national economy that claimant could perform.  See 20 C.F.R.
§ 404.1520(g); see also generally Heckler v. Campbell, 461 U.S.
458, 460-61 (1983).  In making this determination, the agency may
rely on medical-vocational guidelines which establish, through
rulemaking, the types and numbers of jobs that exist in the
national economy.  Id. at 461.  The burden of establishing a
disability is on the claimant, and once the claimant demonstrates
that he or she is incapable of performing his or her past work,
the burden shifts to the agency to show that the claimant may
pursue alternative work.  See Balsamo, 142 F.3d at 80.

As detailed in the Recommended Ruling, the first and second
steps are satisfied – it is not disputed that plaintiff is not
currently employed and that he has a severe impairment.  In their
motions, however, the parties dispute whether plaintiff has a
listed impairment and if not, whether plaintiff could return to
his previous work or some alternative work.  Plaintiff claims
that he suffers from an organic brain disorder that meets § 12.02
of the impairments listed in 20 C.F.R. § 404.1520(d) and objects

to Magistrate Judge Margolis's conclusions that the ALJ's determination that plaintiff does not have a listed impairment was supported by substantial evidence.

As noted above, plaintiff's Objection centers on the treatment by ALJ Horton and Magistrate Judge Margolis of the testimony of Dr. Campagna.  However, as Magistrate Judge Margolis found and for the reasons that follow, the ALJ's determination that Dr. Campagna's testimony was not entitled to dispositive probative weight is supported by substantial evidence, because Dr. Campagna's opinion was contradicted by the findings of other doctors who examined and/or treated plaintiff and by the fact that Dr. Campagna did not actually examine or treat plaintiff.

First, Dr. Campagna's testimony was contradicted by the findings of other physicians who examined and/or treated plaintiff.  Dr. Campagna's testimony that plaintiff's impairment could extend back as far as 1994 is contradicted by the report of Dr. Micalizzi that in December 1994 plaintiff "appear[ed] fairly stable . . . neurologically."  Tr. 375.  Campagna's conclusions are also in conflict with Dr. Zaidi's December 2004 findings that plaintiff's "MRI, carotid ultrasound and echocardiogram . . . were all normal."  Tr. 229, 373.  Although noting in December 1994 that plaintiff's MRI revealed "minimal inflammatory changes," Drs. Irizzary and Chaddha also did not diagnose plaintiff with organic brain dysfunction.  Id. at 378.  Dr.

Welsh's 1996 report noted plaintiff's difficulty with "visual motor-type tasks" and an IQ "within the lower reaches of the Average Range of general intelligence," but did not find that plaintiff suffered a disabling cognitive condition.  Id. at 232-36.  Neither did Dr. Welsh diagnose plaintiff with such a condition in November 2000, when he met with and examined plaintiff a second time.  Id. at 448-52.  Indeed, other than Dr. Campagna's testimony, none of the medical evidence indicate a diagnosis at any time of an organic brain dysfunction.[4]

Moreover, as noted above, Dr. Campagna did not examine or treat plaintiff, and his testimony was based solely on plaintiff's medical records and plaintiff's testimony at the administrative hearing, id. at 655-56, 664, whereas Drs. Micalizzi, Zaidi, Irizzary, Chaddha, and Welsh all examined, questioned, and/or treated Mr. Maxwell.[5]  "The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir.

---

[4] Dr. Campagna also testified in one instance, regarding whether plaintiff would have suffered organic brain dysfunction absent plaintiff's previous drug and alcohol use, that he was "sort of at the fringe of [his] knowledge."  Id. at 657.

[5] Although plaintiff claims that Magistrate Judge Margolis mischaracterized non-examining physicians, such as Drs. Anton and Griel, as examining physicians, regardless of the accuracy of this contention, the conclusions of the examining physicians detailed above are sufficient to cast doubt on the weight to be accorded to Dr. Campagna's contrary opinions.

1999).  As the Recommended Ruling noted, because plaintiff received the majority of his care on an emergency basis, which (if any) of the doctors qualify as "treating physicians" is not certain.  However, in the event a medical opinion is not given controlling weight under the "treating physician" rule, the regulations provide factors to consider "in deciding the weight [to] give to any medical opinion, including: (1) the "examining relationship" – more weight is given "to the opinion of a source who has examined [a patient] than to the opinion of a source who has not;" (2) the "treatment relationship" – more weight is given "to opinions from . . . treating sources . . . ;" (3) "supportability" – "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion;" (4) "consistency" – "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion;" (5) "specialization" – "more weight [is given] to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(d).  These factors weigh against according dispositive probative weight to Dr. Campagna's testimony as he did not examine plaintiff and, as detailed above, his findings are not consistent with the medical record as a whole.

Thus, the ALJ's determination not to accord dispositive probative weight to Dr. Campagna's testimony that plaintiff met the § 12.02 impairment listing was supported by substantial evidence, and the Recommended Ruling on this issue will thus be approved and adopted over objection.  As neither party objects to any other determination in the Recommended Ruling, the balance of that ruling will be approved and adopted as well.

## III. Conclusion

For the reasons set forth above, the Recommended Ruling [Doc. # 52] is APPROVED AND ADOPTED.  Accordingly, plaintiff's Motion [Doc. # 41] is GRANTED in part, as to the request for remand, and DENIED in part, as to the request for reversal; defendant's Motion [Doc. # 49] is GRANTED in part and DENIED in part, as detailed in the Recommended Ruling.  This case is REMANDED as described in the Recommended Ruling for further supplementation of the record by a vocational expert and further consideration by an ALJ of the fifth step in the disability benefits analysis, that is, whether the Commissioner can meet her burden of showing that jobs exist in the national economy that plaintiff could perform.  The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

                    /s/
_____
Janet Bond Arterton
United States District Judge
**Dated at New Haven, Connecticut this 31st day of January, 2007.**

13